**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| S&D TRUCK LEASING LLC<br>101 Nyack Avenue<br>Lansdowne, Pennsylvania 19050;<br><br>*Plaintiff*,<br><br>v.<br><br>FALCON TRANSPORTATION LOGISTICS, LLC,<br>56 Parsons Street,<br>Presque Isle, Maine 04769;<br><br>AMBER LAMBERT,<br>c/o Falcon Transportation Logistics, LLC<br>56 Parsons Street<br>Presque Isle, Maine 04769;<br><br>JOHN DOES (1-10);<br><br>and<br><br>ABC CORPORATIONS (1-10),<br><br>*Defendants*. | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff S&D Truck Leasing LLC ("S&D"), by and through its undersigned counsel, alleges against Defendants Falcon Transportation Logistics, LLC, Amber Lambert, John Does (1-10), and ABC Corporations (1-10) as follows:

## Nature of the Action

1. S&D is an interstate trucking company based in Delaware County, Pennsylvania formed in 2014 that operated successfully and profitably for over a decade.

2. In September 2025, S&D was victimized by unscrupulous actors operating on an industry website who duped S&D into transporting a refrigerated load to an address in Brooklyn, New York that was not the actual intended destination for the load.

3. Despite the fact that S&D was a victim of the scam, and not a perpetrator (a fact confirmed by an insurance company investigation), the broker responsible for the load, acting through one of its employees, posted false and defamatory comments about S&D through submission of a FreightGuard report, an online risk-management and reputation score system widely used by freight brokers and shippers to assess the performance of trucking and motor carriers.

4. Among other things, Defendants falsely asserted that S&D was engaged in "fraudulent activity" and "unethical or deceptive business practices."

5. The publication of Defendants' false and defamatory statements caused brokers to stop tendering loads to S&D. S&D's business collapsed as a result, and it has been forced to cease operations.

**Parties**

6. Plaintiff S&D Truck Leasing LLC is a Pennsylvania limited liability company with its principal place of business located at 101 Nyack Avenue, Lansdowne, Delaware County, Pennsylvania 19050. S&D operated as an interstate motor carrier under MC 907105. S&D's sole member, Stanton Drisco Jr., is a citizen of Pennsylvania. S&D is therefore a citizen of Pennsylvania.

7. Defendant Falcon Transportation Logistics, LLC ("Falcon") is a Florida limited liability company registered to do business in Maine. Its filings with the Florida and Maine Secretaries of State list its principal office in Plant City, Florida, and it holds itself out on its

website as located at 56 Parsons Street, Presque Isle, Maine 04769. Falcon is a licensed property broker, USDOT 2599903 and MC 880894. Falcon's state filings identify Bruce W. Sargent as its manager and Maine registered agent, with addresses in Plant City, Florida and Presque Isle, Maine. Upon information and belief, after reasonable inquiry, none of Falcon's members is a citizen of Pennsylvania.

8. Defendant Amber Lambert is an adult individual who, upon information and belief, is a citizen of Maine. At all relevant times, Lambert was employed by Falcon and acted within the course and scope of that employment. The FreightGuard report identifies Lambert as the person who submitted it on behalf of Falcon.

9. Defendants John Does (1-10) are individuals whose identities are presently unknown to S&D, including employees, agents, or representatives of Falcon who participated in preparing, approving, submitting, or maintaining the FreightGuard report, or in refusing to withdraw it. Upon information and belief, none of John Does (1-10) is a citizen of Pennsylvania.

10. Defendants ABC Corporations (1-10) are business entities whose identities are presently unknown to S&D and that participated in, directed, or benefited from the conduct alleged herein. Upon information and belief, none of ABC Corporations (1-10), or any of their members, is a citizen of Pennsylvania.

**Jurisdiction and Venue**

11. This Court has jurisdiction under 28 U.S.C. § 1332(a). The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has specific personal jurisdiction over Defendants. Defendants directed the report at a Pennsylvania motor carrier, identified S&D in the report by its Lansdowne, Pennsylvania location and MC number, and intended the report to stop brokers from tendering

freight to S&D. Defendants therefore knew S&D would suffer the brunt of the harm in Pennsylvania, and it did. Upon information and belief, Falcon also regularly conducts business in Pennsylvania.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here. S&D received the report, attempted to respond to it, and suffered its injury in Delaware County, Pennsylvania.

## **Factual Allegations**

### The Shipment

14. For over ten years, S&D operated successfully as a motor carrier by obtaining freight from brokers through commercial load boards, including DAT.

15. S&D's business depended on brokers' willingness to tender loads to it.

16. Prior to Defendants' defamatory accusations in October 2025, S&D had never been accused of theft, fraud, or holding freight hostage.

17. On September 11, 2025, a person identifying himself as Samuel Roman of "SS21 Logistics LLC" (MC-1727006) tendered S&D a refrigerated load. He issued S&D a rate confirmation for pickup at Americold in Vineland, New Jersey, and delivery to 714 Atkins Avenue, Brooklyn, New York. The broker identified the load as a "blind shipment," which means the load was to be transported to another storage facility before being shipped to its ultimate destination.

18. S&D picked up the load in Vineland, New Jersey and delivered it to the specified Brooklyn destination set forth in the rate confirmation it received.

19. S&D had no direct contract with Falcon with respect to the load. Falcon never issued S&D a rate confirmation or dispatch. S&D did not know Falcon had any interest in the load.

Upon information and belief, the person using the SS21 Logistics name was impersonating a broker, and S&D was one of the victims of that scheme.

20. S&D did not steal the load, hold it hostage, re-broker it, or work otherwise with MGM Worldwide or any other person or entity involved in stealing and/or mis-directing Falcon’s load.

21. S&D certainly did not demand $5,000, Bitcoin, cash, or any other payment from Falcon or anyone else with respect to the load and made no calls of any kind demanding any such payment.

**Falcon's Insurance Claim Proves that S&D Was Not a Perpetrator of Any Scam**

22. On September 15, 2025, Falcon submitted a cargo claim for the load against S&D's cargo policy with Sentry Select Insurance Company (“Sentry”) (Claim No. 61F024309-741), seeking approximately $42,000.

23. S&D fully cooperated with Sentry’s investigation and gave Sentry its rate confirmation, emails, and text messages.

24. Before October 30, 2025, Sentry's adjuster told S&D's owner that S&D had done nothing wrong and that the claim would not be paid. The adjuster also informed him that Falcon was continuing to press Sentry for payment.

**The FreightGuard Report**

25. Carrier411 operates FreightGuard, a carrier-vetting service that freight brokers use to screen trucking companies and decide which carriers to trust with loads.

26. On October 30, 2025, at 10:17 a.m., Falcon, through its employee Amber Lambert, submitted a FreightGuard report to Carrier411 accusing S&D of stealing Falcon's freight, holding

a load hostage for a $5,000 Bitcoin-or-cash ransom, fraud, and being a "scammer." Each of those accusations was and is false.

27. The FreightGuard report submitted by Falcon and Lambert about S&D identified S&D by name, recited its Lansdowne, Pennsylvania location, and its motor carrier registration number, MC 907105. A true and correct copy of the FreightGuard report submitted by Falcon and Lambert, as received by S&D via email, is attached hereto as Exhibit A and reproduced below:

28. The FreightGuard report charged S&D with: "UNAUTHORIZED RE-BROKERING OF SHIPMENT," "HELD LOAD HOSTAGE," "THEFT OR UNJUSTIFIED LOSS OF FREIGHT," "UNRESOLVED CLAIM ISSUES," "FRAUDULENT ACTIVITY," and "UNETHICAL OR DECEPTIVE BUSINESS PRACTICES."

29. The report's comments stated: "THIS CARRIER IS WORKING WITH MGM WORLDWIDE (MC#1035605). MGM IS TAKING THE LOADS OFF OF DAT AND THEN HAVING S&D HAUL THEM. THEY THEN ARE NOT DELIVERING THE LOADS AND HAVING AUTOMATED CALLS COMING TO THE BROKERS THAT OUR LOAD IS BEING HELD HOSTAGE UNLESS WE PAY THEM $5000.00 IN BITCOIN OR CASH. ALL -- BEWARE OF THESE SCAMMERS. DO NOT USE THEM!!!! OUR LOAD WAS STOLEN FROM NJ. WAS SUPPOSED TO GO TO NC AND THEY TOOK IT TO NY!"

**REPORTED COMPANY:**
S&D TRUCK LEASING LLC
LANSDOWNE, PA 19050
MC907105

**THE FOLLOWING ITEMS WERE REPORTED:**

- UNAUTHORIZED RE-BROKERING OF SHIPMENT
- HELD LOAD HOSTAGE
- THEFT OR UNJUSTIFIED LOSS OF FREIGHT
- UNRESOLVED CLAIM ISSUES
- FRAUDULENT ACTIVITY
- UNETHICAL OR DECEPTIVE BUSINESS PRACTICES

**ADDITIONAL COMMENTS:**
THIS CARRIER IS WORKING WITH MGM WORLDWIDE (MC#1035605). MGM IS TAKING THE LOADS OFF OF DAT AND THEN HAVING S&D HAUL THEM. THEY THEN ARE NOT DELIVERING THE LOADS AND HAVING AUTOMATED CALLS COMING TO THE BROKERS THAT OUR LOAD IS BEING HELD HOSTAGE UNLESS WE PAY THEM $5000.00 IN BITCOIN OR CASH. ALL -- BEWARE OF THESE SCAMMERS. DO NOT USE THEM!!!! OUR LOAD WAS STOLEN FROM NJ. WAS SUPPOSED TO GO TO NC AND THEY TOOK IT TO NY!

30. Read as a whole, the FreightGuard report submitted by Falcon and Lambert states that S&D knowingly participated in stealing Falcon's freight, held the freight for ransom, demanded $5,000 in Bitcoin or cash, and is a fraudulent "scammer" that brokers should not use (the "Defamatory Statements"). Each of those statements is false.

31. The FreightGuard report stated that it would be released automatically to other transportation intermediaries if S&D did not respond within 72 hours. Within that 72-hour window, S&D's owner tried to respond through Carrier411's designated website, only to be informed that a response had already been submitted even though S&D had not yet submitted one.

32. Contrary to the FreightGuard report submitted by Falcon and Lambert, rather than being a perpetrator of the scam, S&D was a victim of it. S&D was deceived by a party posing as

a freight broker, and S&D's cargo insurer, after investigating Falcon's claim, found S&D was not liable.

33. On November 1, 2025, S&D emailed a written response to Falcon, denying the accusations and demanding that the report be withdrawn. Falcon did not withdraw it.

34. Upon information and belief, the report was released to Carrier411's broker subscribers on or about November 2, 2025, and remains available to them to this day.

35. S&D's owner requested that a Falcon representative known as "Jacob" provide the evidence behind the accusations leveled against S&D by Falcon and Lambert. Jacob did not respond to that request.

36. On November 12, 2025, Sentry wrote to Falcon that it had completed its investigation and did not find S&D liable for the loss.

37. Even after receiving Sentry’s report exonerating S&D, Falcon failed to withdraw or modify in any fashion the defamatory FreightGuard report.

38. On February 26, 2026, S&D sent Falcon a certified demand disputing the report, asking for any evidence supporting it, and demanding its removal.

39. To date, Falcon has still not produced any evidence supporting the accusations it made against S&D and has not retracted or modified the FreightGuard report in any fashion.

**Defendants knew their accusations were false**

40. Defendants published the Defamatory Statements knowing they were false or with reckless disregard for their truth. Among other things:

- Falcon had no contract or communications with S&D establishing any role in the alleged scheme.
- Falcon had no information that S&D made, or was connected to, any ransom demand.

- Falcon published the FreightGuard report only after its claim against S&D's insurer had stalled, to pressure S&D for payment or to retaliate for non-payment.
- Falcon kept the report posted even after S&D's denial, after Sentry found S&D not liable, and after S&D's written demand.

**The Harm to S&D**

41. The effect of the FreightGuard report on S&D was devastating; it cost S&D its broker relationships and its business.

42. Mere months after the report was published, S&D was forced to cease operations.

43. After the publication of the FreightGuard report, brokers stopped tendering loads to S&D because of it. For example, Total Quality Logistics, LLC ("TQL"), which had consistently tendered loads to S&D for nearly ten years, ended its relationship with S&D because of the report, even despite S&D's written plea in December 2025 that TQL continue working with it.

44. As a result of Falcon and Lambert's submission of the FreightGuard report, S&D's revenue collapsed. S&D then fell behind on its financial obligations and ultimately sold its trucks and other equipment, ceasing operations within months of the defamatory report being published.

**Count I — Defamation and Defamation Per Se**
**(Against All Defendants)**

45. S&D incorporates the preceding paragraphs.

46. Falcon, through employee Lambert, accused S&D of crimes, including theft and extortion, and of fraud and dishonesty in its trade as a motor carrier.

47. The Defamatory Statements constitute defamation per se.

48. Defendants published the Defamatory Statements to Carrier411 and, through FreightGuard, to the brokers and other transportation intermediaries who subscribe to it with the

specific intention of diminishing S&D's reputation and causing it financial harm by explicitly directing its readers not to work with S&D.

49. The Defamatory Statements identify S&D by name, location, and MC number. Recipients understood them as applying to S&D and understood their defamatory meaning.

50. The Defamatory Statements are false now and were false when made.

51. Defendants published the Defamatory Statements knowing they were false or with reckless disregard for their truth or, at a minimum, negligently.

52. Any conditional privilege Defendants may claim was abused. Defendants published the Defamatory Statements with knowledge of their falsity or with reckless disregard of their falsity, for the improper purpose of pressuring S&D for payment or retaliating for non-payment and, moreover did so to every FreightGuard subscriber rather than to just those with a legitimate interest in Falcon's claim.

53. Lambert is liable because she wrote and submitted the report. Falcon is liable directly because Lambert acted within the scope of her employment.

54. As a direct result, S&D suffered special harm, including lost loads, lost revenue, and the loss of its business, and general damages to its reputation, the total value of which exceeds $150,000.

55. Defendants' conduct was outrageous and malicious, warranting the imposition of punitive damages.

**<u>Count II — Tortious Interference with Prospective Contractual Relations</u>**
**(Against All Defendants)**

56. S&D incorporates the preceding paragraphs.

57. S&D had longstanding business relationships with freight brokers, including its nearly ten-year relationship with TQL, and a reasonable likelihood of future load tenders from them and other brokers based on years of dealing.

58. Defendants knew brokers use FreightGuard to decide which carriers to hire. They published the report for the purpose of stopping brokers from doing business with S&D, as the report's own words "DO NOT USE THEM" clearly demonstrate.

59. Defendants had no privilege or justification. They interfered by means of making false accusations of crimes and fraud against S&D.

60. TQL and other brokers stopped tendering loads to S&D because of the FreightGuard report submitted by Defendants, and S&D suffered actual damages, including lost loads, lost revenue, and the loss of its business.

61. Defendants' conduct was outrageous and malicious, warranting the imposition of punitive damages.

**Prayer for Relief**

WHEREFORE, Plaintiff S&D Truck Leasing LLC demands judgment in its favor and against all defendants, jointly and severally, for:

- compensatory damages, including special, general, and presumed damages, in an amount exceeding $150,000.00, exclusive of interest and costs;
- punitive damages;
- pre- and post-judgment interest and costs; and
- all such other relief as the Court deems just and proper.

**Jury Trial Demanded**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MITTS LAW, LLC**

*/s/ Matthew S. Cioeta*
Matthew S. Cioeta, Esquire
PA Attorney I.D. No. 330410
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0120 (telephone)
(215) 866-0111 (facsimile)
mcioeta@mittslaw.com
*Attorneys for Plaintiff*

Dated: October 26, 2026